Our third case of the morning is in Appeal No. 242946, Ryan O'Donnell v. City of Chicago. Okay. I think we have everybody. Is it Mr. Zolna? Yes, J.C. Zolna for plaintiff's appellants. Okay, very well. You may proceed. If you have as little as two unpaid parking tickets, the City of Chicago can take your car, sell it, and keep all the proceeds without even offsetting any of the ticket debt. If you buy a new car, the City will take that one, too. And the next one, the City will literally take every car you ever own in perpetuity simply because you failed to pay your parking tickets on one of your vehicles. Now, the City tries to justify this practice by saying it's just exercising its police power to enforce its parking and traffic laws. But the case law recognizes that there are limits to the police power. That a city's exercise of its police power can go too far, and if it does, there is a taking. The police power is not a blank check. That taking liability attaches after the government interest in retaining the property ceases. So what is the city's interest in this case fulfilled? Because that is the key question in this case. The city says its interest in enforcing its parking and traffic laws never ceases. It can take every car someone ever owns for the rest of their life, and its punitive goals will never be achieved, even if it's for something as trivial as failing to pay your parking meter. Do you mind if we step back just a minute? Sure. We're looking at a takings claim. Yes. And so, looking at the Illinois Vehicle Code, I just want to make sure that I'm on stable ground here, is the taking, okay? I want to make sure that I understand what we are identifying as the property right that has been taken. The property right is a vehicle, and when it's taken by the city, it's also any, you know, when the city takes a vehicle from you for unpaid parking ticket debt, under the city's own municipal code, it has a possessory lien on that vehicle in the amount of the unpaid ticket debt. So the property interest here is the vehicle, but also once- And so we've got to slow it down because I don't think it's as high level as the vehicle. I really want to drill down on the property right at the moment that the taking happens, okay? And so, just to clarify, in the Vehicle Code, I think it's 4-208, you have abandoned vehicles, you have lost vehicles, stolen vehicles, unclaimed vehicles. So there's four that are identified in that Vehicle Code that they begin to use at disposal, that the state of Illinois has recognized. And so, for registered owners, out of those categories that are triggered by the immobilization program in the city of Chicago, which category, which type of vehicle are we talking about? It would be unclaimed. So, I want to make sure that I'm following what you're- the argument here is that there is a property right under the Takings Clause for unclaimed vehicles in Illinois. Yes, and the word unclaimed is a little bit- they use that as a term of art, but unclaimed can mean, under the Illinois Vehicle Code, where someone- where a car is taken for unpaid ticket debt and the owner just simply can't pay the tickets. The reason why I'm needing you to really own which property, because states, we've recognized, and the Supreme Court, the Tyler case explained, property rights are given by the state. And so, if we're talking about a property right, we have to be clear about what property right we're identifying. So, what I'm hearing from you this morning is that unclaimed vehicle is the property right that we're contesting. Yes, and the Illinois Vehicle Code of those four categories, correct. No, I'm not- are we talking about all four categories? No, just the one. Are we talking about the unclaimed vehicle category?  Okay. Yes, yes. Can I ask you a threshold question as well? Yes. One of the- maybe the single biggest thing that throws me off about this case that would- maybe you can help me with. As I read your complaint, you're bringing a facial challenge. Am I right about that?  Okay. What in your view is the legal standard for a facial takings challenge? It's unconstitutional in all of its applications. Okay, so in substance, the standard that the U.S. Supreme Court announced in Salerno. Correct. Correct.  And how is it that we can conclude that at the level of the city's program- I'm just making up a term. Pick a different term if you don't like that. How can we conclude that in 100% of the fact patterns that it is unconstitutional? So the Salerno standard literally permits you to hypothesize fact patterns.  And the other thing is the Supreme Court has said facial takings challenges are going to be pretty rare. Well, in this case, Your Honor, when the city enforces this ordinance, in every case it takes a car. And in every case, it does so without providing any type of compensation to the owner, even offsetting the ticket debt. But they don't have to do that if it's abandoned. We've already answered that question. Correct. But it's not abandoned. It's unclaimed. There's a distinction between abandoned and unclaimed. Abandoned is a voluntary relinquishment of your property. Unclaimed simply means you were not able to pay your tickets. That's not true. It means that you didn't come down and follow the procedural posture that the city has put in place to claim the vehicle. Well, I would refer to the Supreme Court's decision in Tyler, which said that actually rejected that as a reason for saying the property, in that case, a home, was unclaimed or abandoned. It literally said— No, they said the house was not abandoned. Correct. In that case, I have the site. The county cites no case suggesting that failing to pay is itself sufficient for abandonment. The county cannot frame that failure as abandonment to avoid the demands of the taking clause. I think that same principle applies here. The fact that you're not able to pay to get your property back does not mean you voluntarily abandoned or relinquished that property. It simply means that you didn't have enough money to pay your tickets. The reason I asked you the question after Judge Parr asked her question is I'm troubled by the facial aspect of this. The fact pattern, hypothetically, that is kicked around in the briefs a little bit that I think you very well could be on to something. If somebody has a $75,000 Mercedes that is taken pursuant to this program and it's sold to a car dealership for $50,000 and the person has $500 or $1,000 of parking tickets, I think, well, all right, you very well could be on to something. Is that as applied? Yeah, as applied. But if we change the fact pattern and we have a car that is worth hardly anything, $200 or $300, $500, and they owe $1,000 of parking tickets, I think in that as applied hypothetical, the takings claim weakens substantially. And the one thing that really, really stands out to me about this case is unless I have missed it, there is no Eighth Amendment claim here. There is no excessive fines claim in this litigation, correct? Correct. At least as it stands right now. Correct. So we're talking only about the takings clause. I'm going to give you time. Don't worry about the clock. Okay, thank you. Thank you. Let me answer the first question. Yeah, go ahead. You have a car, let's say you have $1,000 in ticket debt, right? Yeah. And you have a car that's worth $500. Okay. And the city takes that car, right? They don't even, and they sell it for, let's just say they sell it for $500 for sake of argument. It's less than the ticket debt. Right. Right? That's your hypothetical? A car that's worth less? Yeah. Okay, and we have to add one more thing that I think is fair.  That the city would say, well, if you said, well, why did you guys do that? Well, as a punishment for not paying the tickets that you got letter after letter after letter about. Okay. Well, let me kind of take, there's a couple different questions in here and I'm going to try to take them. Yeah, go ahead. Go ahead. The first one is whether this is still unconstitutional in that circumstance. Right. And the answer is yes, it is. Because the city is taking property worth, admittedly only $500 less than the ticket debt, but it's keeping it out. It doesn't even offset your ticket debt. So you're still left with $1,000 in ticket debt and now you've lost your car. You don't have a car and you still owe the same amount of property debt or the same amount of ticket debt. Had the city at least given you the value of the car, you'd only owe $500 in ticket debt. You're still losing. You're still, this government is still taking property from you. I'm going to let you continue. Can I pause you? So legally, what is really significant to the facial takings claim is across all hypotheticals, if you sat here until the end of the day and just made up hypotheticals, the lack of any offset is critical to the facial takings claim. Yes. Okay. Yes. Yeah. I think you have to answer that yes.  Yes. Okay. Keep going. So I'm trying to, there was a couple of questions in terms of. If it turns into punishment, that's where you were headed. Okay. You said I'm going to loop back to that. Right. Right. Punishment, even like the Eighth Amendment, for example, punishment applies only to punishment for committing a crime. No, no, no. Or for misconduct. The prohibition in the Eighth Amendment against excessive fines applies civilly.  Correct.  I didn't mean maybe the terminology I'm using a little bit differently. For misconduct, however you want to describe it, criminal or civil misconduct. But in this case, you could literally get dozens or even hundreds of tickets for things like speeding through school zones, driving without headlights or brakes. And the city will never take your car as long as you pay your tickets. It's tied directly to your ticket debt. And it's not punishment. It's an inducement to pay. And it's proven. I'm not just making this up. It's proven by the city's own municipal code. The city's own tow ordinance says nothing about punishment. What it does say is that when the city takes a car from paid ticket debt, it has a lien on the vehicle. That's why you're saying it's not, you can't equate this to the forfeiture scheme. No, it is absolutely not a forfeiture. It's certainly not a Venice forfeiture. The city will literally give your car back to you. The supposed instrument of the crime that's being forfeited, they'll give it back to you. That's why you wanted to say stay away from due process. Stay away from labeling this forfeiture. Move it under Tyler. Correct. Correct. And I think that's a very important part of this case is that the city's own municipal code does not impose a punishment. It talks about a lien. A lien on the car. And the amount of the unpaid ticket debt. And that kind of gets me back, if you don't mind me circling back to where I was kind of going with my opening here. I want to go back to the Mercedes example. And what happens in that instance where you have the $75,000 Mercedes, sells it for $50,000. And the $50,000 under the takings clause would have to go, I guess, to support the city, it would have to go to offset. And that's why the vehicle code, the Illinois vehicle code, says the city can give the registered owner back in the overage over the fine amount, over the penalty amount. The municipal code says that. Not the vehicle code. The vehicle code permits the city to make the decision whether or not to give the overage. It does say that you can give the overage to the city. Correct. Right, yes, correct. So the point, you know, the overarching point of this case to us is when is that city's, you know, once the city loses an interest in the property, once that property, their interest ceases, they can't hang onto that property anymore or else it's a taking. So the key question in this case is what is that limit? And as I just mentioned, the city literally. So is the taking for you the vehicle itself or is the taking the overage? So that's why. I don't mean to hedge, but it's a little bit of both, right? Because they are taking the vehicle in the first instance. I want to make sure we're not speaking of each other for purposes of the record. Going back to my original question, what is the taking? Are you, is the taking the unclaimed vehicle or is the taking the money or are you arguing now that it's both? It's taking the vehicle. And my point here is that the city's interest in that vehicle only extends as far as the actual fines and penalties that were assessed for the violation. Anything more than that is a taking. So the taking aspect is, I guess, what you could call, I guess, maybe the equity or the value of the vehicle. So is the property right than the equity? It's the value of the vehicle in excess of the fines and penalties. That's how I would describe it. The value of the vehicle in excess of the fines and penalties. Because the city's punitive interest in enforcing its traffic and parking laws has to be limited to what those fines and penalties are. That's why I asked at the beginning, what is the property rate? Correct. And I will say, I mean, the city, I know I'm running out of time. I hope you just indulge me for a moment here. You're going to give me some rebuttal time. Go ahead. The city admits that what I just said is true. On page 10 of its brief, it does say that if the vehicle owner satisfies the penalties, the immobilized or impounded vehicle is returned because the city's punitive goals relating to the underlying offenses have been achieved. And the city is right. Its punitive goals are tied directly to the fines and penalties that were assessed for the violation. And it doesn't matter whether those fines and penalties are satisfied by payment or whether they're satisfied by taking property subject to a possessory lien. And make no mistake, that's exactly what the city is doing here. Their municipal code literally says you're taking this subject to a lien in the amount of the ticket fines. In both cases, whether it's payment or property, taking property subject to a possessory lien, the fines are satisfied and the city's punitive goals are completely achieved. And if the city takes property worth more than what its actual lien is, well, then it's exceeded its interest. Yeah, I think we got your argument. Let's do this. Let's give you a couple of minutes on rebuttal. Okay? Let's see how long we go with the appellees and let's hear from them at this point. We'll come back to you. Thank you. You're welcome. Okay, is it Mr. or is it? Merrill.  Nice to see you. Whenever you're ready. May it please the court. I'm counsel for the city. I'll be addressing the takings issue, and then counsel for Coapelli URT will address their additional separate arguments. Similar to jurisdictions across the country, the city has a traffic code enforcement system where tickets are used as a means to punish vehicle owners for violations of the law. Those violations are subject to administrative adjudication, and when someone receives multiple determinations of liability but fails to satisfy their punishments, enforcement of the punishment is incrementally increased using a mobilization and impoundment. This enforcement system is a punitive one, and the Supreme Court held in Venice and this court reiterated in Johnson v. Mantua County that when a government is employing a power other than eminent domain, such as its police power, a claim based on the taking clause is a nonstarter. The district court's dismissal complaint should be affirmed. To start, it's not in dispute that, at least in certain contexts, the government can lowercase T take property without implicating the takings clause. It happens in forfeiture proceedings like in Venice, but it also happens when the government takes property maybe as evidence, as part of an investigation or prosecution, or as proceeds of criminal activity, just to name a few examples. So the only question presented here is whether the city's system enforcing its traffic laws constitutes an exercise of eminent domain, such that the takings clause is even implicated, or whether it serves to punish illegal activity through lawful proceedings, such that the taking clause is not implicated. So can I, I just want to make sure that we're all on the same page. You agree that the claim is facial? Yes. Okay. And so everything you're saying, by definition, has to be responsive to the facial aspect of the challenge. Yes. That the fact pattern just does not matter. Yes. And so there's a lot of examples. Some were mentioned in the opening arguments. A lot of in the briefing were talking about, oh, the value of the car, the value of how many tickets, or what happens to a vehicle. Was it released after mobilization? Was it released after impoundment? Right. So in the, if you, I don't know if this is literally in the briefs, but in substance it is. The $75,000 Mercedes hypothetical to deal with $500 of parking tickets or something. That would not be relevant to the facial claim, which is what I'm looking at in all of its applications. You know, there could be instances where, for example, the value doesn't even, of disposing of the car simply for scrap value, doesn't even amount to the amount of expenditure the city did for the immobilization and impoundment process. So why doesn't the fact that it's brought as a facial takings claim under the 14th Amendment, there is no 8th Amendment claim that way. Why doesn't that, why doesn't that resolve it? Because I think, I think, let me put it a different way. I think your adversary is right. The $75,000 Mercedes hypothetical, you would have some work to do on that. Where the $75,000 Mercedes is taken, they keep it, they go to the car dealership and sell it for $50,000 or something, and then they, hypothetically, and then there's a deposit of $50,000 into the general fund of the city. Now, you've got some work to do on that hypothetical. No, we, we agree that the facial distinction could be enough to end this, this case before us. But on the topic of the hypothetical you're talking about, the city still doesn't think that the takings clause would be implicated. You know, what you basically have here is a threshold question under Venice. Are you operating in the punitive space or are you operating in an eminent domain style space? And so in the hypothetical that you're talking about, you know, this is essentially a slope type argument. What's the limiting principle? So suppose, for example, the city, and I'm just making this up to try to tease it out legally, okay? Suppose the city took my home because I had $500 of unpaid parking tickets and a home was worth a million bucks. There's no limiting principle in the city's view to this? There are limiting principles. What are they? There are limits to what the government can do to punish under the Constitution. One of those is not the takings clause. So, for example, there's many, as you were talking about, the Due Process Clause, the Eighth Amendment Excessive Fines Clause. These are all instances where the Constitution does provide guardrails on what the government can do to punish an individual. But when you're operating in that punitive criminal policing context, different parts of the Constitution are implicated. I want to make sure that I'm following. So what I'm hearing you say this morning is that the takings clause doesn't allow us to have this dialogue. Yeah, I believe it's almost a non-starter from the outset. That's why you have in cases. Let me close the loop here. And so I want to make sure I'm following is that it's because the city is operating this immobilization program in the punitive space? Yes. Okay. Yeah, you're just saying, writ large, categorically, as a legal matter, it's an exercise of police power. Yes. That's what you're saying. And under the kind of language the court used. Term of art. Yes. Yeah, and the language that the court used in Venice, which put inside kind of the exact factional analog to this case, whether it's a forfeiture scheme, is it part of the long-standing punitive jurisprudence of the country? And we would say that this falls in that camp as well. Now, opposing counsel mentioned Tyler and how they believe it more fits under there, but this gets to the point that we're just discussing here because Tyler doesn't change the relevant analysis under Venice because the government's action there lacked any punitive characteristics and therefore fell outside of the punitive jurisprudence of the country that Venice expressed. So in that tax case, it was never intended to be punitive. Yes, and, in fact, the government in that case, in their briefing, disclaimed in the argument that its actions were punitive in nature, and because the government said it was not exercising its police powers to punish wrongdoing when it forced the sale of the home, the court had no reason to consider Venice or its progeny in that line of cases. Here we have the opposite. The city has explicitly designed a system to achieve punitive aims. So the proper analysis just isn't comparable. What do we do with the argument that your friend made on the other side that the city has represented that the immobilization program is also not intended to be punitive? I don't think we would agree with that assessment. We always stand by the fact that it serves punitive interests. I mean, here we have plaintiffs characterize it as simply about the inability to pay. I think that would be inaccurate. The city is only immobilizing and impounding vehicles to ensure that the punishment on the owners who violate traffic laws is actually realized. The enforcement program at the bottom targets scoffle owners and forces them to actually experience the penalties imposed on them for violating multiple traffic violations. Now, they talk about, well, if you simply pay the fine, well, then you're not immobilized, but that's the case with every punitive system. Once you make your payment, once you're made whole, whether it's imprisonment or paying fines or whatever the punishment may be, then you've paid your debt and internalized the cost of your violations and are presumably less likely to commit illegal acts again. By contrast, when a vehicle owner refuses to pay their fines and therefore ignores the punishment imposed on them for violating the law, the city simply increases pressure of that underlying punishment. Now, policymakers could have a debate whether fines or the city's current system is the best or most fair way to enforce the law, but a system that enforces punishments is a punitive system, not an exercise of eminent domain. And the D.C. Circuit addressed the constitutionality of a very similar traffic code enforcement system in Tate and readily held that as in Venice, such an enforcement system was firmly fixed in the punitive jurisprudence of the country and did not constitute takings. And district courts within this circuit in Walker and Lacey have also explained that the city's enforcement system is an exercise of police power and relying on Venice that is not facially unconstitutional under the takings clause. This is in addition to numerous other decisions from across the country reaching similar conclusions, including the Massoud case from California, which we cited in our brief. These decisions are all plainly correct. If your honors have no further questions, I think for these reasons the judgment of the district court should be affirmed. Okay. Hearing nothing further, Mr. Merrill, we'll hear from your colleague. This is URT, right? Correct.  Mr. Bartolotta, nice to see you. Good morning. Good morning. May it please the court, my name is Ross Bartolotta. I represent URT, United Road Towing, Inc. First off, I think this court has hit the main point here. It's a facial challenge with the taking clause, and we agree with the city's position and arguments in this case. In this case, the city acquired property that were impounded and disposed pursuant to a last step of a lawful graduated and statutory process. The vehicle mobilization process is designed to enforce compliance with lawful parking and traffic laws, and it does not violate the taking clause of the Fifth Amendment of the Constitution. In addition, as it relates to the analysis, I think that's the analysis here, and we've articulated that this is not why it's a taking. As an alternative ground from the court's dismissal order, the plaintiffs have not alleged a valid Monel claim against URT because URT was not the moving force behind any constitutional violation, that the vehicles were not towed, impounded, or sold pursuant to any policy or practice of URT, but were impounded and sold by the city, and URT did not have any policymaking authority for the city. And we articulate in our brief, as it relates to that point, about the moving force and the policymaking that is the city and not URT. For instance, URT is not responsible for the citation process that led to the death. URT is not responsible for the process that challenged the violations. That's one thing, too, as you look at this program, the program by the city, if someone has tickets, it's just not automatic where there is a forfeiture. There's steps that, if there's an offender, they can pay the fine. There's a process where you can enter a payment plan. So these are all steps that are in place, and it's only at the last step when the individuals fail to comply with what the statute allows when the vehicle can be towed. Furthermore here, again, URT was not involved with the city policy. It certainly would get, you know, once the process went through, they would be recommended to tow the vehicle. Furthermore, URT did not act under color of law because it was not utilizing or enforcing any core function of the city or jointly participating with the city on any municipal enforcement process at issue. One thing I would say is, you heard in the briefs, the plaintiffs argued that the forfeiture solely results from inability to pay. And I think really what this is, is that's incorrect. Rather, the forfeiture is a result of the motorist's refusal to pay. It's the refusal to pay when you were given opportunities under the statute, and you simply disregard that. And at the point, as Judge Wood put in her brief, it's the remedial process that is the important factor in the case. Thank you for your time. My time is up, but thank you. Okay. You're quite welcome. Yep, Mr. Zolny, you have some – we're going to give you a couple minutes. Okay, thank you. Yeah, you're quite welcome. You know, there's been a lot of talk about the facial challenge today, and I have yet to hear an example, either from the city or the court, where it wouldn't be unconstitutional as applied. I answered, I believe, your one hypothetical in a situation where it would still be unconstitutional. I have yet to hear an example from the city or URT of an example where it would not be unconstitutional. So I don't know what else to say. I truly believe that in every case, this ordinance is unconstitutional. I think you've answered it. We just have to decide it. Okay. Okay. I'm all ears to hear other examples, if there's one out there. I did want to just mention Tyler v. Henneman County because that decision kind of came out in the middle of all this. And, you know, the district court dismissed it, as does the city, because this was a taxing case, right? And the district court said it's rooted in principles that go back as far as the Magna Carta, right? Well, it's true. The Supreme Court and Tyler relied on precedent going back to the Magna Carta. And I think it's important to take a look at exactly what that precedent was. The first thing they cited was Magna Carta, a commentary on the Great Charter of King John. This commentary was not limited to the collection of property taxes. In fact, it didn't even mention property taxes or real property at all. Like here, it involved debts to the crown and the seizure of chattels, i.e. personal property for unpaid debt. And they cited Chapter 26, which discussed a problem that existed prior to the Magna Carta. And that problem was described as follows. The government attached and sold chattels out of all proportion to the sum actually due. Sounds an awful lot like what the city's doing here. And then it went on to say, and after satisfying the crown debt, a large surplus would often remain in the Sheriff's hands, which would be exceedingly difficult to force him to disgorge. Again, that sounds an awful lot like what the city's doing here. But this commentary noted that the Magna Carta saves the day. The Magna Carta sought to make such irregularities impossible. The officers were only allowed to attach as many chattels as could reasonably be considered necessary to satisfy the full value of the debt, and the residue must be returned. And the other precedent they relied on, Blackstone, was the same. It actually didn't deal with property taxes. It dealt with bailment and the common sense notion that when you seize personal property for debt, there's an implied contract in law to restore the property on payment or when sold to render back the overplus. So this historical precedent in Tyler, the underpinning in Tyler, applies directly to this case. It was not limited to the collection of property taxes. It had to do with seizing personal property for nonpayment and the Crown's limited interest in seizing only what is owed and nothing more. And I want to make one last point because this is, I think, very important. And it's in our briefs, but I don't know if it's highlighted. Yeah, go ahead. Why don't you make it and wrap up and we'll call it an argument. Parking tickets, enforcement of parking tickets, are actually enforcement of a judgment. Parking tickets are adjudicated at the Department of Administrative Hearings, a judicial body. They enter administrative judgments. They're the ones who hand down the fines and penalties. They impose the punishment. They impose fines and penalties and a final judgment that's entered against, in this case, Ryan O'Donnell. So when the city takes cars for unpaid ticket debt, it's actually enforcing a judgment. It's not imposing a punishment. The punishment was already handed down by DOA, the Department of Administrative Hearings, a court, in a final judgment. And I just want to say one last thing. Tyler says, specifically, even outside the tax context, a judgment creditor can only take property to satisfy a judgment to satisfy the debt and anything more has to go back. And that's consistent with laws all over the country. Okay, we're going to call it an argument at that. We understand and appreciate your position very much, Mr. Morrell, or Merrill, and Mr. Bartolotta. We appreciate your advocacy as well, and we'll take the appeal under advisement. Thank you. You're welcome.